UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MARIA GONZALEZ,

        Plaintiff,

- against -

NANCY A. BERRYHILL, ACTING COMMISSIONER
OF SOCIAL SECURITY,

        Defendant.
------------------------------------------------------------------X

**MEMORANDUM AND ORDER**
18-CV-419 (RRM)

ROSLYNN R. MAUSKOPF, Chief United States District Judge.

    Plaintiff Maria Gonzalez brings this action against the Commissioner of the Social Security Administration ("the Commissioner") pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). Gonzalez appeals the Commissioner's final decision that she is not entitled to supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("SSA").

    Before the Court is Gonzalez's motion for judgment on the pleadings, and the Commissioner's cross-motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Notice of Motion (Doc. No. 19); Pl.'s Mot. (Doc. No. 20); Notice of Cross-Motion (Doc. No. 21); Def.'s Cross Mot. (Doc. No. 22).) For the reasons set forth below, the Commissioner's motion is denied, Gonzalez's motion is granted, and the case is remanded to the Commissioner for further proceedings consistent with this Memorandum and Order.

## BACKGROUND

**I. Gonzalez's History**

    On May 20, 2019, the parties filed a joint stipulation of facts. (Doc. No. 27.) The facts set forth therein are hereby incorporated in this decision by reference. Because the Court

incorporates these facts, only additional facts that are pertinent to this decision are addressed below.

Gonzalez was born on January 13, 1964, and was 44 years old at the alleged onset of her disability. (Transcript ("Tr.") (Doc. No. 24) at 37, 1974.) She was born in the Dominican Republic and came to the United States when she was 20 years old. She obtained a GED in the United States and later went to beauty school, but she never worked as a beautician. (*Id.* at 41–42.) She cannot read, write, or speak English, but she is able to understand some English. (*Id.* at 45, 2134.) Gonzalez attempted suicide by cutting her wrists and was hospitalized at Holliswood Hospital on November 23, 2008. (*Id.* at 2199, 2204.) While hospitalized, she was diagnosed with "major depressive disorder, severe, single episode, with psychotic features," and was discharged to return home. (*Id.* at 2201.) On June 8, 2009, Gonzalez filed a claim for Social Security disability benefits. (*Id.* at 1975.) In connection with this application, and at the request of the Commissioner, Gonzalez was examined by psychologist Toula Georgiou, PhD. (*Id.* at 2214.) Dr. Georgiou found that Gonzalez would have a moderate to severe limitation in maintaining a regular schedule, learning new tasks, making decisions, relating to others, and dealing with stress, due to psychiatric difficulties related to depression, and found that Gonzalez's symptoms could significantly interfere with her ability to function. (*Id.* at 2216.) Nonetheless, Gonzalez's claim was denied on November 4, 2009, and Gonzalez did not appeal.[1] (*Id.* at 1975.)

In 2014, Gonzalez presented to Jamaica Hospital for treatment, stating that her condition had worsened. (*Id.* at 2237–38.) She was evaluated by Helen Harris, LCSW, who diagnosed

---

[1] Denials of claims at the initial level are frequently "durational denials" which are based not upon a lack of illness or symptoms, but upon a belief or expectation that symptoms which otherwise meet the criteria for disability would improve within the 12-month durational window required to prove disability pursuant to 20 C.F.R. § 416.909 or 20 C.F.R. § 404.1509.

major depression and recommended both psychotherapy and psychiatric medication. (*Id.* at 2243.) Thereafter, Gonzalez was treated by both Ms. Harris and psychiatrist Joseph Georges, M.D., with monthly appointments with Dr. Georges, as well as an individual appointment each week and two weekly group therapy meetings with Ms. Harris. (*Id.* at 3265; *see also id.* at 2243, 2310.) Dr. Georges found that Gonzalez suffered from major depression, severe with suicidal ideation. (*Id.* at 2307, 2341, 2441, 2474, 2509, 2542, 2576.) It was also noted that Gonzalez lost 42 pounds because she was depressed and lost her appetite. (*Id.* at 2410.)

In September 2014, Gonzalez was assigned an intensive case manager ("ICM") through Western Queens Case Management. (*Id.* at 2169.) The ICM's function was to accompany Gonzalez to medical appointments, assist her in obtaining benefits, and assist in her divorce proceedings. (*Id.* at 2169.)

The medical record, although focused primarily on Gonzalez's mental health issues, contains repeated references to physical conditions suffered by Gonzalez. (*See e.g.*, *id.* at 3381, 3393.) There is a medical note that indicates that Gonzalez was seen by a neurologist and diagnosed with carpal tunnel syndrome. (*Id.*) On July 13, 2015, a "government worker" named Noelina Archiegas completed a Disability Report on behalf of Gonzalez in which she identified that Gonzalez was being treated by Dr. Thambirajah Nandakumar for evaluation of her right hand. (*Id.* at 2164–67.) The form lists an address for Dr. Nandakumar which is not the address for Jamaica Hospital.[2]

On the same disability form, Dr. Maria Perfetto-Tullo of Ozone Park, New York, is also listed as a medical provider who treated Gonzalez from January 2013 through June 2015, the

---

[2] Dr. Thambirajah Nandakudar is listed by health.usnews.com website to be a neurologist in Jamaica, NY, with affiliations with a number of hospitals. *See Dr. Thambirajah Nandakumar, MD*, U.S. NEWS & WORLD REPORT, https://health.usnews.com/doctors/thambirajah-nandakumar-299385 (last visited March 25, 2020).

3

month prior to the filing of the form.  (*Id.* at 2168.)  Despite indications in the record that she worked at Jamaica Hospital, Dr. Perfetto-Tullo's address was also not listed as Jamaica Hospital.  (*Id.*)  Prescription logs from Gonzalez's pharmacy indicate that Gonzalez was prescribed lisinopril for hypertension by Dr. Perfetto-Tullo.[3]  (*Id.* at 2174.)  In addition to listing medication prescribed by Dr. Maria Perfetto-Tullo, Gonzalez's pharmacy logs indicate that Gonzalez was prescribed medication by Mark Vine, M.D., who has not been named by Gonzalez as a physician and whose name is not contained in the Jamaica Hospital records.[4]  (*Id.* at 2175.)

In addition to references regarding treatment for physical conditions, there are repeated references in the medical record from Jamaica Hospital that Gonzalez was diagnosed as suffering from hypertension and from hypertensive retinopathy in both eyes, but the hospital records themselves do not show treatment for the conditions.  (*Id.* at 110, 171, 3393.)  At her hearing, Gonzalez stated that she was treated for hypertension by "Dr. Torres" – in a likely reference to Dr. Perfetto-Tullo, who did prescribe hypertension medication.  (*Id.* at 42, 2174.)

## II. Gonzalez's Application for Benefits

Gonzalez filed a claim for SSI benefits on January 23, 2015, alleging an onset of adjustment disorder, dysthymic disorder, personality disorder, depressed mood, and anxiety.  (*Id.* at 1974–75, 2096–2117.)  The SSA requested only Gonzalez's medical records from Jamaica Hospital, and on June 10, 2015, the SSA determined that Gonzalez was not disabled based on these records.  (*Id.* at 1987.)  Notably, the SSA did not request that Gonzalez appear for any

---

[3] Dr. Maria Perfetto-Tullo is listed by health.usnews.com as a Family Medicine Doctor in Ozone Park, NY.  *See Dr. Maria Perfetto-Tullo, MD*, U.S. NEWS & WORLD REPORT, https://health.usnews.com/doctors/maria-perfetto-tullo-659438 (last visited March 25, 2020).

[4] Dr. Mark Vine is a urologist located in Cedarhurst, NY, according to the website www.healthgrades.com.  *See Dr. Mark Vine, MD*, HEALTHGRADES, https://www.healthgrades.com/physician/dr-mark-vine-x4bxm (last visited March 25, 2020).

4

consultative examination with regard to her physical or mental conditions at any time after the filing of her claim on January 23, 2015.

Gonzalez requested a hearing before an administrative law judge on July 13, 2015.  (*Id.* at 1995–97.)  At the hearing, which occurred on January 12, 2017, Gonzalez remained in Jamaica, New York, and ALJ Stanley Chin appeared via video conference from Baltimore, Maryland.  (*Id.* at 37–48.)  On February 3, 2017, ALJ Chin issued a decision denying Gonzalez's claim.  (*Id.* at 16–36.)  Gonzalez filed a request for review of ALJ Chin's decision on April 4, 2017.  (*Id.* at. 2095.)  On November 17, 2017, Gonzalez's request for review was denied by the Appeals Council, making ALJ Chin's decision the final decision in the matter.  (*Id.* at 1–8.)  Gonzalez filed this action on January 22, 2018.  (*See* Compl.)

### III.  Medical Opinion Evidence

There is scant medical opinion evidence in the file.  The medical records of Gonzalez's neurologist and primary physician were not requested, and therefore neither has submitted an opinion regarding Gonzalez.  The Commissioner did not request that Gonzalez appear for any consultative examination subsequent to the filing of Gonzalez's claim in 2015.  Therefore, the only opinions contained in the file are the consultative examination performed by Dr. Georgiou in 2009 in relation to the prior filing, the opinion of Dr. Joseph Georges which was countersigned by LCSW Helen Harris, and the later opinion of LCSW Harris alone.  The content of these opinions is outlined below.

#### A.  Toula Georgiou, PhD

On October 15, 2009, Gonzalez was examined by psychologist Toula Georgio, PhD, pursuant to the request of the Commissioner.  (Tr. at 2214–18.)  Dr. Georgiou noted that Gonzalez had been hospitalized in November 2008 due to a suicide attempt and had thereafter

5

been in outpatient treatment with Dr. Sanmiguel until June 2009.  (*Id.* at 2214.)  She noted that Gonzalez complained of difficulty with sleep, loss of appetite, and depressive symptoms of crying, dysphoric mood, hopelessness, short temper, isolation, concentration difficulty, and tiredness.  (*Id.*)  She also noted that Gonzalez reported no anxiety, panic, or suicidal thoughts.  (*Id.* at 2214–15.)  Nonetheless, Gonzalez looked "disheveled," had slouched posture, lethargic motor behavior, and a monotonous voice.  (*Id.* at 2215.)  Dr. Georgiou noted depressed affect, dysthymic mood, and mildly impaired concentration.  (*Id.*)  She also noted mild to moderately impaired memory skills, fair insight, fair judgment, that Gonzalez could follow and understand simple directions, and that Gonzalez could perform simple tasks independently.  (*Id.* at 2216.)  According to her notes, Gonzalez would have moderate to severe difficulty with maintaining a regular schedule, learning new tasks, performing complex tasks, making decisions, relating with others, and dealing with stress.  (*Id.*)  Dr. Georgiou stated that the results "appear to be consistent with psychiatric problems and this may significantly interfere with the claimant's ability to function on a daily basis."  (*Id.*)  Dr. Georgiou diagnosed Gonzalez with major depressive disorder, recommended "psychiatric and psychological treatment to assist in alleviating her significant depressive-related symptoms," and found that her prognosis was "fair."  (*Id.*)

      **B.  Joseph Georges, M.D.**

On May 13, 2015, psychiatrist Joseph Georges, M.D., completed a medical source statement for Gonzalez, which was countersigned by LCSW Helen Harris.  (Tr. at 3265–67.)  He indicated that Gonzalez attends group therapy once a week, individual therapy once a week, and is seen for a psychiatric medication consult once a month.  (*Id.* at 3265.)  He also stated that Gonzalez had a diagnosis of major depressive disorder and that her symptoms included insomnia, anhedonia, poor appetite, and no desire to leave home.  (*Id.*)

6

For these conditions, Gonzalez was prescribed Celexa, Buspar, and Neurontin, and experienced side effects including dizziness and dry mouth. (*Id.*) Dr. Georges noted that she would require future treatment due to the severity of her illness, and that her presenting problem was that she was suicidal. (*Id.*) After outlining her symptoms, Dr. Georges noted that Gonzalez has difficulty getting out of the house, has a low energy level, gets upset easily, and that she is forgetful and misplaces things, but added that Gonzalez is not presently suicidal and is capable of handling her own benefits. (*Id.*) Dr. Georges opined that Gonzalez is limited in concentration and attention and noted that she is irritable, has little patience, and tires easily. (*Id.*) Furthermore, Gonzalez is limited with regard to social interaction, does not socialize, stays home all day, and is easily aggravated. (*Id.* at 3267.) Regarding her ability to adapt, Dr. Georges wrote that Gonzalez is limited and noted that "[h]er judgment is impaired by her depression," but that he cannot provide an opinion regarding Gonzalez's ability to perform work-related activities. (*Id.*)

    C.  **LCSW Helen Harris**

On August 3, 2016, social worker Helene Harris completed a psychiatric report for Gonzalez. (Tr. at 3491–97.) The report indicated that Gonzalez had been seen weekly for therapy and monthly for medication management from May 8, 2014, through July 21, 2016. (*Id.* at 3491.) A mental status examination performed on July 12, 2016, resulted in a diagnosis of "major depressive disorder – severe." (*Id.*) Additionally, Gonzalez had a GAF score of 41–50. (*Id.*) Ms. Harris noted that Gonzalez had been prescribed Celexa, Wellbutrin, and Remeron. (*Id.* at 3492.) According to the report, Gonzalez had marked limitations in her activities of daily living "which seriously interfere[] with her ability to function." (*Id.*) For instance, Gonzalez

"stays in bed due to depression and does not answer the phone or go out for 3 or 4 days a week." (*Id.* at 3493.)

With regard to social functioning, Ms. Harris opined that Gonzalez had marked restrictions and noted that "she does not like to talk to people." (*Id.*) With regard to concentration, persistence, and pace, Ms. Harris opined that Gonzalez had a marked limitation. (*Id.*) Ms. Harris provided examples of Gonzalez's limitations, including the fact that she is forgetful and cannot concentrate, and "she often does not follow through on appointments or taking care of things like the SS/Medicaid office." (*Id.*) Additionally, Gonzalez's condition makes it difficult for her to follow through on tasks such as reading and responding to notices in a timely manner. (*Id.*) Ms. Harris noted that Gonzalez "is depressed and stays in bed and doesn't care because of the depression." (*Id.*) Ms. Harris opined that Gonzalez has never had episodes of deterioration in a work setting because Gonzalez's husband would not allow her to work. (*Id.* at 3494.) According to the report, Gonzalez's condition has lasted or can be expected to last at least 12 months, and Gonzalez "has been severely depressed for the past two years." (*Id.*)

Ms. Harris opined that Gonzalez could not make occupational adjustments, and "she is easily agitated and regresses to depression." (*Id.*) To Ms. Harris' knowledge, Gonzalez was not abusing substances. (*Id.*) Finally, Ms. Harris indicated for a second time that Gonzalez's impairment would be expected to last for 12 months or more. (*Id.* at 3496.)

## IV.   ALJ Hearing

The hearing in this matter was notably short. While the record does not indicate the time that the hearing began or ended – as is usual practice for such hearing transcripts – the transcript included only ten pages of testimony, including testimony from both Gonzalez and the

8

vocational expert. (Tr. at 37–48.) The first two and a half pages of testimony comprise of the ordinary formalities of beginning a hearing record; Gonzalez's testimony begins on page 41 and ends on page 45, when the vocational expert's examination began. Thus, Gonzalez's hearing testimony was just under four pages. Gonzalez was asked only two questions by ALJ Chin, neither of which was probative as to her physical or mental limitations. (*Id.* at 41–45.)

At the outset of the hearing ALJ Chin limited what he would allow Gonzalez's attorney to ask. (*Id.* at 41.) Gonzalez stated that she completed school through the 11th grade before moving to the United States, where she obtained a GED. (*Id.*) After obtaining her GED, Gonzalez went to beauty school, but never worked as a beautician. (*Id.* at 41–42.) Gonzalez stated that she had lived alone, but is now living with her son. (*Id.* at 42.) She testified that she cannot work because, outside one or two days a week, she stays in bed with no strength and no desire to take a shower. (*Id.*) She stated that her medication was prescribed by Dr. Georges and Dr. Torres. (*Id.*)

Gonzalez stated she had been hospitalized at Jamaica Hospital and Holliswood Hospital, including a hospitalization the previous January at Jamaica Hospital for diverticulosis. (*Id.* at 43.) She further testified that in 2008 she was hospitalized for two weeks. (*Id.*)

Gonzalez stated that she has problems sleeping and if she does not take medication will be woken by thoughts. (*Id.*) She testified that she can use public transportation "sometimes" and that she does not like to travel alone because she is scared of getting lost. (*Id.* at 44.) She sees a psychiatrist once a month, a psychologist twice a week, has no hobbies or interests, and had a driver's license, but did not renew it when it expired. (*Id.*) She started to describe her daily activities, but it appears that her testimony was cut off at that point. (*Id.*)

ALJ Chin asked Gonzalez two questions.  First, he asked if she could speak or write English, and she responded that she could understand some English, but could not speak it.  (*Id.* at 45.)  ALJ Chin then asked if the individual and group therapy was in English or Spanish.  (*Id.*)  Gonzalez answered that it was in Spanish.  (*Id.*)

At the hearing, Vocational Expert Deborah Von Durham also testified.  (*Id.* at 45–47.)  ALJ Chin stated that Von Durham was to consider a hypothetical individual with the same age, education and past work history; who was limited to short, simple, routine instructions performed in a work environment free of fast paced production requirements and involving only simple work-related decisions; who can adapt to infrequent and gradual workplaces changes; and who would be limited to occasional interaction with the public and occasional interaction with coworkers and supervisors.  (*Id.* at 46.)  Von Durham opined that the person would be able to hold the jobs of "silverware wrapper," DOT 318.687-018; "electric cleaner," DOT 729.687-014; or "linen grader," DOT 361.687-022.  (*Id.* at 46–47.)  As a second hypothetical, ALJ Chin asked Von Durham to consider the prior hypothetical with the addition that the individual would be off task for 20 percent of the day due to symptoms.  (*Id.* at 47.)  Von Durham testified that such an individual would not be capable of performing any job available in the national economy.  (*Id.*)

## V.     ALJ Chin's Decision

On February 8, 2017, ALJ Chin issued his written decision finding Gonzalez not disabled within the meaning of the SSA.  (Tr. at 22–33.)  In the decision, ALJ Chin followed the familiar five-step process for making disability determinations:

> [1] First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.  [2] If he is not, the Commissioner next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  [3] If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix I of the

regulations. If the claimant has such an impairment, the Commissioner will consider him *per se* disabled. [4] Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. [5] Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.

*See Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quoting *DeChirico v. Callahan*, 134 F.3d 1177, 1179–80 (2d Cir. 1998)); *see also* 20 C.F.R. § 416.920(a)(4).

At step one, ALJ Chin found that Gonzalez had not engaged in substantial gainful activity since the application date of January 23, 2015. (Tr. at 24.) At step two, ALJ Chin found that Gonzalez was severely impaired by major depressive disorder. (*Id.*) ALJ Chin found no other impairments, severe or nonsevere. (*Id.*) ALJ Chin found that Gonzalez had a mild limitation in understanding, remembering, and applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting, and maintaining pace; and a mild limitation in adapting and managing herself. (*Id.* at 25–26.) At step three, after considering Listing 12.04, ALJ Chin found that these impairments did not meet or qualify as the medical equivalent of any of the listed impairments in Appendix 1 of the regulations. (*Id.* at 24–26.) ALJ Chin considered the paragraph C criteria for Listing 12.04 and found that they were not met, specifically finding that "the evidence did not establish the presence of a medically documented history of the disorder over a period of at least 2 years." (*Id.* at 26.)

Next, in analysis germane to steps four and five, ALJ Chin assessed Gonzalez's residual functional capacity ("RFC"). He determined that Gonzalez had the RFC

> to perform a full range of work at all levels but with the following non-exertional limitations: The claimant would be limited in the workplace to short and simple routine instructions performed in a work environment[] free of fast-paced production requirements, involving only simple work-related decisions. She can adapt to gradual and infrequent workplace changes. The claimant would be limited to occasional interaction with the public and occasional interaction with co-workers and supervisors.

11

(*Id.* at 26–27.)

In making this determination, ALJ Chin gave "some weight" to the opinions of Dr. Georges and Ms. Harris, stating that their conclusions were inconsistent with treatment notes, vague, did not indicate the extent of Gonzalez's limitations, and were inconsistent with Gonzalez's use of public transportation and ability to maintain personal care. (*Id.* at 29–30.) At no point in the decision does ALJ Chin address the consultative examination of Toula Georgiou, PhD, and therefore he assigns it no weight.

At step four, ALJ Chin found that Gonzalez had no past relevant work. (*Id.* at 31.) At step five, ALJ Chin found that there existed a significant number of jobs in the national economy that Gonzalez could perform. (*Id.* at 32.) Accordingly, ALJ Chin found that Gonzalez was not disabled within the meaning of the SSA from January 23, 2015, through the date of the hearing. (*Id.* at 32–33.)

## STANDARD OF REVIEW

In reviewing the final determination of the Commissioner, a reviewing court does not determine *de novo* whether the claimant is disabled. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, it "may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g); *Bubnis v. Apfel*, 150 F.3d 177, 181 (2d Cir. 1998)). "'[S]ubstantial evidence' . . . [is] 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Where the Commissioner makes a legal error, a "court cannot fulfill its statutory and constitutional duty to review the decision of

the administrative agency by simply deferring to the factual findings of the ALJ." *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984) (internal citation omitted). An ALJ's failure to apply the correct legal standards is grounds for reversal. *See id.*

## DISCUSSION

Gonzalez first argues that ALJ Chin erred in finding that Gonzalez did not meet or equal a listed impairment because ALJ Chin failed to conduct a proper paragraph C inquiry and erred in his paragraph B analysis by failing to support his conclusions with substantial evidence. (Pl.'s Mot. at 9–16.) Next, Gonzalez argues that ALJ Chin's RFC is improper because he failed to develop the record with regard to Gonzalez's physical impairments and failed to consider the combined effects of Gonzalez's impairments. (*Id.* at 16–25.) Additionally, Gonzalez argues that ALJ Chin erroneously relied upon flawed vocational expert testimony and that ALJ Chin erred in assigning limited weight to the opinions of Dr. Georges and Ms. Harris. (*Id.*)

The Court agrees with Gonzalez that ALJ Chin failed to properly develop the record. (Pl's Mot. at 16–25.) In this matter, ALJ Chin failed to request medical records and failed to elicit any meaningful testimony from Gonzalez at her hearing. Because the Court finds that the failure to develop the record is so pervasive and profound, the Court declines to address the other issues Gonzalez raises in her motion.

## I. Failure to Request Medical Records

According to SSA regulations, the Commissioner must "make every reasonable effort" to assist the claimant in developing a "complete medical history." 20 C.F.R. § 404.1512(d). Furthermore, "[i]t is the rule in our circuit that the ALJ, unlike a judge in a trial, must [her]self affirmatively develop the record in light of the essentially non-adversarial nature of a benefits

13

proceeding. This duty . . . exists even when, as here, the claimant is represented by counsel." *Pratts v. Chater*, 94 F.3d 34, 38 (2d Cir. 1996) (internal citations and quotation marks omitted).

ALJs bear an affirmative duty to develop a claimant's medical history for the 12 months prior to the date that the claimant filed for disability, should the evidence presented be insufficient to determine whether the claimant is disabled. *See Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 2011); *Hilsdorf v. Commr of Soc. Sec.*, 724 F. Supp. 2d 330, 343 (E.D.N.Y. 2010). An ALJ must make "every reasonable effort" to obtain reports from medical sources to fill gaps in the administrative record. 20 C.F.R. § 416.912.

In the instant case, there were outstanding medical records from qualified medical sources who were not only licensed physicians but, in some cases, specialists. Moreover, those records pertained to treatment of serious conditions, the effects of which ALJ Chin should have considered. For instance, the records of the neurologist treating Gonzalez for carpal tunnel syndrome would be expected to be highly probative and highly relevant.

Second Circuit law requires that the ALJ consider the combined effects of all impairments, both severe and nonsevere. An RFC determination must also "account for limitations imposed by both severe and nonsevere impairments." *Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) (summary order). Here, ALJ Chin ignored evidence that there were additional impairments. Even if they would not have been found to be severe, ALJ Chin was required to consider them. ALJ Chin was on notice of the name and address of Gonzalez's neurologist, Dr. Thambirajah Nandakumar, as well as the name and address of her primary doctor, Dr. Maria Perfetto-Tullo. The records from Jamaica Hospital indicated that a diagnosis of hypertension and hypertensive retinopathy made by the primary doctor and a diagnosis of carpal tunnel syndrome made by a neurologist. (*Id.* at 110, 171, 3381, 3393.) Had ALJ Chin

14

considered a diagnosis of carpal tunnel syndrome the RFC might have changed considerably. It was error to fail to request medical records from Dr. Nandakumar and Dr. Perfetto-Tullo. As a result of this error, the administrative record on which the decision was made was incomplete.

The Court remands with the directive that the Commissioner obtain all of Gonzalez's medical records, including, but not limited to, the records of Dr. Thambirajah Nandakumar, Dr. Maria Perfetto-Tullo, and Dr. Mark Vines.

## II.     Adequacy of the Hearing

It was the duty of the ALJ to provide Gonzalez with a full and fair hearing, with a focus on investigating the facts of her case as a neutral fact finder. *See Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) ("The model is investigatory, or inquisitorial, rather than adversarial"); *see also* 20 C.F.R. § 405.1(c)(1) ("In making a determination or decision on your claim, we conduct the administrative review process in a non-adversarial manner."). On the basis of the record, the Court cannot find that ALJ Chin thoroughly and conscientiously investigated this matter at the time of the hearing. ALJ Chin erred in asking Gonzalez only two questions, neither of which pertained to her mental or physical disabilities. Furthermore, the fact that the hearing lasted no more than ten minutes and was memorialized on less than ten pages, is indicative of a rushed hearing.

It is notable that at the hearing Gonzalez testified that she had been hospitalized earlier in the year for diverticulitis, yet was not questioned regarding this condition. (Tr. at 43.) Gonzalez also stated that she was being seen by "Dr. Torres," a doctor who had not been named in any report or treatment note prior to that day, and again no questions were asked regarding this assertion. (*Id.* at 42.) Furthermore, Gonzalez was not asked about her daily routine by ALJ Chin. (*Id.* at 45.) Additionally, the record indicates that Gonzalez was assigned an ICM to help

15

her with activities of daily living.  (*Id.* at 2169.)  This is pertinent to her ability to perform activities of daily living, yet no attempt was made to question Gonzalez with regard to any assistance she receives from the ICM worker in managing her daily tasks.

In short, ALJ Chin failed to elicit any relevant testimony from Gonzalez with regard to her mental or physical conditions.  This was an error, as numerous physical conditions were overlooked in the record, and outstanding medical records were made known to ALJ Chin by Gonzalez's ICM worker.  This failure to obtain Gonzalez's medical records could have been corrected if Gonzalez had been asked to list her physical and mental disabilities, and to list the doctors she has treated with, as is customary in these proceedings.

## CONCLUSION

For the reasons set forth above, the Commissioner's cross-motion for judgment on the pleadings is denied, and Gonzalez's motion for judgment on the pleadings is granted to the extent it seeks remand.  This matter is remanded to the Commissioner of Social Security for further proceedings consistent with this order.  The Clerk of Court is respectfully directed to enter judgment accordingly and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
       May 18, 2020

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
Chief United States District Judge

16